BROD, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

**St. Louis Court of Appeals, November 14, 1905.**

1. **CARRIERS OF PASSENGERS: Degree of Care.** A carrier of passengers, whether by steam railway or street railway, is required to exercise a very high degree of care to carry the passengers safely and is responsible for all injury resulting to passengers from even a slight negligence on its part.

2. **EVIDENCE: Res Ipsa Loquitur: Prima Facie Case.** In an action against a street railway company for injuries received by plaintiff on account of defective appliances, where the evidence showed there was a sudden and unexpected explosion so that the car burst into flames and the plaintiff's injuries were caused by being thrown from the car, or jumping from the car in the excitement and panic, she made out a prima facie case for the jury.

Brod v. St. Louis Transit Co.

3. **PLEADING: Variance.** In an action for personal injuries caused to plaintiff by the defendant's negligence as a carrier of passengers, where the petition alleged that the accident was caused by defective machinery and appliances, upon the defendants motor car the allegations were sufficient to embrace every electric agency in or upon the car, including a concealed wire which burnt off on account of a short circuit and caused the explosion and produced the injuries sued for.

4. **PRACTICE: Instructions: Harmless Error.** In an action for personal injuries, where the petition alleged that the injury was caused to plaintiff while a passenger on defendant's motor car, by the defective motor, machinery and appliances, an instruction which authorized a recovery if the injury was occasioned by "any defect in the condition of the car," there being no allegation in the petition to that effect, was open to criticism; but since no evidence was offered showing that the car was in any way defective, and that clause in the instruction would not probably have misled the jury, it was not reversible error.

5. ———: ———: **Evidence.** And in such case though the accident was caused by an explosion on account of defective appliances, it was not error to submit to the jury the question of defendant's improper management of the car, where the evidence tended to show that the car was started with a sudden jerk and too much force, in a way that might have occasioned the explosion.

6. ———: ———: **Conflicting Instructions.** In such case an instruction for plaintiff which submitted the case to the jury on plaintiff's prima facie case, requiring in general terms a high degree of care on the part of the defendant, was not in conflict with an instruction offered for defendant calling attention in detail to the facts, which would constitute a high degree of care.

7. **APPELLATE PRACTICE: Weight of Evidence.** Although a verdict of a jury may appear to the appellate court to have been contrary to the weight of evidence, where the evidence was conflicting, and the trial court overruled the motion for new trial, the appellate court will not disturb the verdict on that ground.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*Boyle & Priest, Geo. W. Easley* and *Geo. T. Priest* for appellant.

(1)   The court erred in refusing to sustain defendant's demurrer at the close of all the evidence, because the plaintiff failed to prove the specific charge of negligence alleged in his petition.   When the plaintiff in his petition limits his right to a recovery to a specific charge of negligence it must be proven, and when there is a failure of proof no verdict can stand in his favor.   Hite v. Railroad, 130 Mo. 132; Waldhier v. Railroad, 71 Mo. 517; Price v. Railroad, 72 Mo. 517; Feary v. Railroad, 162 Mo. 75; McManamee v. Railroad, 135 Mo. 440, and authorities cited.   (2)   The court erred in giving plaintiff's instruction No. 1.   It is error to permit the plaintiff in an instruction to recover on a cause of action not stated in his petition, and for that reason plaintiff's instruction No. 1 was erroneously given.   Price v. Railroad, 71 Mo. 414; Ely v. Railroad, 77 Mo. 34; Current v. Railroad, 86 Mo. 66; Allen v. Railroad, 183 Mo. 411.

*Seneca N. & S. C. Taylor* and *Bert F. Fenn* for respondent.

(1)   A carrier of passengers is required, so far as it is capable by a very high degree of care, to carry them safely, and it is responsible for all injuries resulting to its passengers from even the slightest negligence on its part.   Hite v. Railroad, 130 Mo. 139; Clark v. Railroad, 127 Mo. 208; O'Connell v. Railroad, 106 Mo. 482; Furnish v. Railroad, 102 Mo. 450; Leslie v. Railroad, 88 Mo. 53; Waller v. Railroad, 83 Mo. 615; Lemon v. Chanslor, 68 Mo. 356; Higgins v. Railroad, 36 Mo. 428; Aston v. St. Louis Transit Co., 105 Mo. App. 226; Choquette v. Railroad, 80 Mo. App. 520; Parker v. Railroad, 69 Mo. App. 54; Powers v. Railroad, 60 Mo. App. 482; White v. Railroad, 136 Mass. 324; Nagle v. Railroad, 88 Cal. 86; Street Railway v. Cook, 145 Ill. 551; Lam-

beth v. Railroad, 66 N. C. 494; Railroad v. Thompson, 76 Ga. 770; Palmer v. Canal Co., 120 N. Y. 175; Penn Co. v. Roy, 102 U. S. 451; Railroad v. Horst, 93 U. S. 291; Railroad v. Derby, 14 How. (U. S.) 468; 2 Greenleaf on Evid., sec. 221; 2 Kent Commentary, 600. Carriers of passengers by street railways are held to the same degree of care as steam railways. Jackson v. Railroad, 118 Mo. 224; Sullivan v. Railroad, 133 Mo. 6; Olsen v. Railroad, 152 Mo. 432. (2) An explosion, followed by setting fire to the car of a carrier of passengers for hire, resulting in injury to a passenger, constitutes a prima facie presumption of negligence on the part of the carrier, which casts upon the carrier the burden of showing to the reasonable satisfaction of the jury that such explosion and fire took place notwithstanding the carrier had exercised to prevent the same the utmost care, skill and foresight of very cautious persons engaged in that employment, and notwithstanding that the carrier had not been guilty of even the slightest negligence tending to produce such explosion and fire, but that it was the result of mere casualty or unavoidable accident. Poulsen v. Nassau Elec. Co., 18 App. Div. (N. Y.) 221; Poulsen v. Nassau Elec. Co., 30 App. Div. (N. Y.) 246; Gilmore v. Railroad, 6 App. Div. 117; Leonard v. Railroad, 57 App. Div. 125; Buckee v. Railroad, 64 App. Div. 360; Cassaday v. Railroad, 68 N. E. 10; Clark's Accident Law, sec. 50, page 108. All the above authorities relate exclusively to injuries occasioned by electric explosions and fires, caused by defective electric apparatus on street cars. The following cases are also in point: Och v. Railroad, 130 Mo. 51; Hipsley v. Railroad, 88 Mo. 352; Dougherty v. Railroad, 81 Mo. 325; Madden v. Railroad, 50 Mo. App. 675; Yerkes v. Keokuk Packet Co., 7 Mo. App. 267; Meyer v. Railroad, 64 Pa. St. 225; Taylor v. Railroad, 48 N. H. 304; Railroad v. Blumenthall, 160 Ill. 40; Railroad v. Jennings, 83 Ill. App. 612; McCaffery v. Railroad, 193 Pa. St. 339; Meador v. Railroad, 61 Pac.

442; Railroad v. Findlay, 76 Ga. 311; Murphy v. Railroad, 89 Ga. 833; Railroad v. Snyder, 117 Ind. 435; Anderson v. Shaley, 114 Ind. 553; Railroad v. Anderson, 72 Md. 526; Gehnor v. Railroad, 101 Mass. 208; Railroad v. Kuhn, 86 Ky. 578; Railroad v. Jones, 83 Ala. 377; Gleeson v. Railroad, 140 U. S. 435; Fetter on Carriers of Passengers, p. 1109, chap. 34, sec. 480; Story on Bailments, 601; 2 Shearman and Redfield on Neg. (5 Ed.), 516-517; Hutchinson on Carriers (1 Ed.), p. 617, sec. 800; Booth on Street Rys., sec. 361. (3) Revised Statutes 1899, section 865, reads: "The Supreme Court or Court of Appeals, shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error materially affecting the merits of the action." Berkson v. Railroad, 144 Mo. 211; Gorham v. Railroad, 113 Mo. 408-421; Harris v. Powell, 56 Mo. App. 24; Goodwin v. Railroad, 53 Mo. App. 9.

STATEMENT.—On November 10, 1903, plaintiff was a passenger on one of defendant's Easton avenue cars traveling west in the city of St. Louis. She was injured and on account of her injuries recovered a judgment for nine hundred dollars from which defendant appealed. Defendant's negligence and plaintiff's injuries are alleged as follows in her petition:

"That defendant, in violation of its duty to plaintiff, on the tenth day of November, 1903, carelessly and negligently operated a car, the motor, machinery, appliances and parts of which were insecure, and while in this unsafe and insecure condition of said motor, machinery, appliances and parts thereof, the employees of defendant, operating said car, carelessly and negligently operated the same as that, in consequence of the defective condition of said motor, appliances and parts of said car, and the careless and negligent manner in which the same was operated by the employees of defendant thereof, there was an explosion of the motor, or some

other part of the apparatus of said car, causing the car to take fire and that plaintiff, either by such explosion, or in the rush of passengers to escape from a seeming imminent danger, was thrown or crowded through the window of said car, falling and striking upon the pavement with great force and violence, whereby she was covered with cuts, wounds and bruises and contusions, received a sprain to her back, a shock to her nervous system and spinal cord, whereby she was caused to suffer excruciating physical pain and mental anguish, and will continue to suffer the same, in all reasonable probability for years to come; that her clothing was greatly damaged, if not completely ruined, and that her purse and umbrella which she was carrying were lost."

The answer was a general denial.

Plaintiff testified as follows: "When we reached just a little west of Vandeventer avenue there was a loud explosion in the front part of the car, and immediately following the explosion there was a sheet of flame swept the car and the whole south side of the car was ablaze. The flames lasted several minutes, it seemed to me, and I was so terrified I thought the whole car was going to pieces and we would all be burned to death. It stampeded the passengers; everybody seemed excited and all trying to get out of the car as soon as possible. I saw the doorway was blocked, and no chance to get out that way, and I rushed to the window, intending to get out of the window, because I was afraid I would be burned to death, and when I got to the window I saw my sister's body was hanging half out the window, and I became unconscious; and when I returned to consciousness I was lying on a bed in a house on Easton avenue. And when I became conscious there was a lady there bathing my face." Plaintiff also testified that the car stopped at Vandeventer avenue to let passengers on and off, that it started with a jerk and then the exlposion came. "There was a sort of roaring noise seemed to come from underneath the car; sounded like the whole

car was going to pieces. . . . And the crash of glass. All the glass in the windows fell out from the force of the explosion;" that the explosion sounded like the report of a cannon. In respect to her injuries plaintiff testified as follows: "My whole face was terribly bruised and contused, and my right eye was bruised and contused and blackened, and there was a deep cut on my right cheek, and other cuts on my face, and the skin was taken off the right side of my face and the dirt ground into my flesh. My nose was injured so I lost all feeling completely in my nose and upper lip for about two months, and my teeth were injured and my gums were so badly swollen I could not take any solid food in my mouth for several days; and my back was sprained, and my right hip was badly bruised, and I received a severe shock to my nervous system. I suffered excruciating pains from the nervous shock and cuts on my body, and I couldn't sleep for two weeks for the nervousness, and I still suffer from insomnia, and at times I suffer with pains in the back of my head and neck." Plaintiff also testified that she was confined to her bed for two weeks and to the house for six weeks.

In regard to the explosion and its effect and the scaring and stampeding of the passengers (the car was crowded) plaintiff was corroborated by four or five other witnesses, some of whom were passengers and others residents of the neighborhood where the casualty occurred.

There is no direct evidence in regard to how plaintiff got out of the car. The evidence shows she either jumped out or was pushed out of a window. She was found lying in the street in an unconscious condition.

Defendant's evidence shows that the car was equipped with approved, modern electric appliances; that it had been carefully inspected on the evening of October ninth and found in good condition; that the accident was caused by a wire concealed between the inside and outside casing of the car; that this wire was in the

proper and usual place for such wires and was properly insulated; that it had burned in two on account of a short circuit of the electric current it carried; that the circuit was made short in some unexplainable way; that such an accident as described by plaintiff's witnesses had never been heard of before and it was impossible for an explosion to have taken place; that the car was inspected in half an hour after the accident and the motor and all the apparatus except the burned-off wire found in good condition.

The evidence of defendant's expert electricians showed that the equipment of the car was the approved electric equipment of the modern street car used all over the world, and that of defendant's inspector that the inspection made on the ninth was thorough and the car was found in perfect condition and was in that condition when it left defendant's shops on the morning of November tenth. The burned wire being concealed, it could not be discovered by an inspection without tearing out the side of the car. In rebuttal, a motorman of four or five years' experience testified that in his experience as a motorman he had frequently had such accidents occur.

BLAND, P. J. (after stating the facts).—1. It is the well-settled law, often repeated by the Supreme Court, that a carrier of passengers, whether by steam or street railway, is required, so far as it is capable, by a very high degree of care, to carry them safely and it is responsible for all injuries resulting to its passengers for even the slightest negligence on its part. [Clark v. Railway, 127 Mo. l. c. 208, 29 S. W. 1013; Hite v. Railway, 130 Mo. l. c. 139, 31 S. W. 262, 32 S. W. 33; Combs v. Sullivan County, 105 Mo. l. c. 233, 16 S. W. 916; O'Connell v. Railway, 106 Mo. 482, 17 S. W. 494; Sullivan v. Railway, 133 Mo. 1, 34 S. W. 566; Olsen v. Railway, 152 Mo. l. c. 432, 54 S. W. 470; Mathew

115 app—14

v. Railway, 78 S. W. (Mo.) 271.] Plaintiff made a prima facie case by showing she was free from blame and that the accident occurred. [Olsen v. Railway, supra, and cases cited; Clark v. Railway, supra.]

In Clark's Accident Law, Street Railways (2 Ed.), sec. 50, it is said: "Where an electric car burst into flames, the company must explain the cause of the fire." This text is supported by Poulsen v. Railroad, 30 App. Div. (N. Y.) 246; Leonard v. Railroad, 47 App. Div. (N. Y.) 125; Buckbee v. Railroad, 64 App. Div. (N. Y.) 360, and Casady v. Railway, 68 N. E. (Mass.) 10, in all of which flashes of electricity and fires occurred on street cars in operation and carrying passengers. And in Poulsen v. Railroad, 18 App. Div. (N. Y.) 221, it was held: "Where an electric car burst into flames, and a child, who is in the car, becoming frightened, jumps out of it and is thereby injured, the railroad company is called upon to explain the cause of the fire." In Hill v. Scott, 38 Mo. App. l. c. 374, quoting the language of Mr. Chief Justice Erle in his celebrated judgment in the case of Scott v. London & St. Catherine Docks Co., 3 Hurl. & Co. 596, 601, it is said: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." Hill v. Scott is approvingly cited in Seiter v. Bischoff, 63 Mo. App. l. c. 160; Ward v. Steffen, 88 Mo. App. l. c. 576; Raney v. Lachance, 96 Mo. App. l. c. 484, 70 S. W. 376.]

In Turner v. Harr, 114 Mo. 335, 21 S. W. 737, the same rule of evidence was applied. Indeed, the judgment of Chief Justice Erle in the Scott case has been adopted as a rule of evidence in most if not all the states of the Union and by the Federal courts. [See note to Barnowski v. Helson, 15 L. R. A. (Mich.) 33.]

All the evidence conduces to show that the explosion, flash, or whatever it may be termed, was unusual and severe. It broke out the window glass in the car and set the car on fire, frightened the passengers, causing them to rush to the doors and open windows of the car to escape what appeared to them to be an impending danger. In the rush plaintiff either jumped or was pushed out of a window, receiving injuries. We think plaintiff was entitled to go to the jury on this evidence. But defendant contends that the petition alleges the explosion was caused by a defective motor and the plaintiff offered no evidence that the motor was defective. The petition does allege the motor was defective, but it does not stop with the motor; it also alleges that the machinery, appliances and parts thereof were defective, embracing within its scope every electric agency in or upon the car for its operation and is broad enough to take under its outspread wings not only the motor but any and all the other electric appliances or parts thereof with which the car was equipped, including the burnt-off wire which defendant's witnesses testified caused the electric flash and fire.

2. The court gave the following instruction for plaintiff:

"1. The court instructs the jury that if they believe from the evidence that while defendant was operating with electricity, street cars as a common carrier of passengers for hire, the plaintiff on November 10, 1903, took passage on one of defendant's cars, and paid her fare, and while she was being carried as such passenger, there was an explosion under the car occasioned by some part of the apparatus, and that such explosion was followed by flame and fire in said car, from which the car took fire and began to burn, and that said explosion, flame, fire and burning of said car, were calculated to alarm and fill with fear and dread of injury or death from fire any reasonably prudent person who was a passenger upon said car; and if the jury further believe

from the evidence that thereupon plaintiff became so alarmed and filled with fear and dread of being burned that she endeavored to escape from said car through the window thereof, in order to avert what she believed to be an imminent peril to her life, and that while she was thus endeavoring to escape she exercised such care as a reasonably prudent person would exercise under the same circumstances; and that in so attempting to escape she was hurt by being violently thrown upon the paved street; and if the jury believe from the evidence that such explosion, flame and fire and burning of said car were occasioned by any defect in the condition of said car or the apparatus thereof, or any improper management of said car, and if such defective condition or improper management resulted from any negligence on the part of the defendant, or its agents or servants, that is, any failure on their part to exercise the highest degree of care, skill and foresight of reasonably cautious persons engaged in operating electric street cars, then the jury will find for the plaintiff, and assess her damages, as stated in another instruction; unless the jury further find that plaintiff was guilty of negligence directly contributing to her injuries."

Defendant criticises the instruction on several grounds, one of which is that it submits a cause of action not stated in the petition. The instruction in no way materially departs from the allegations of the petition. The petition is broad and so is the instruction. Plaintiff did not allege the specific cause of the explosion of the car nor did she prove the exact location or cause of the explosion and fire. She and her witnesses testified that the noise of the explosion came from beneath the bottom of the car, on the left side and near the front end, and that the fire enveloped the left side of the car. Plaintiff could not know and therefore was not required to allege the cause of the explosion and fire. She made a prima facie case by showing the unusual occurrence and it is this prima facie case the instruction

submitted to the jury. The instruction is further criticised for having in it the following clause, to-wit: "were occasioned by any defect in the condition of said car." The instruction is open to this criticism: there was neither allegation nor proof that the car itself was defective, and this clause should have been omitted from the instruction or have been stricken out; but we do not think the jury were or could have been misled by having their attention directed to the condition of the car as there was no evidence whatever that it was out of condition. The criticism in respect to the negligent management of the car is not just. There was evidence that the car was started forward on Vandeventer avenue with a jerk, that too much power was applied to start the car and that when this is the case there is more likelihood of the fuse blowing out and an explosion than when the power is properly applied. Under this evidence, we think it was proper to direct the attention of the jury to the management of the car and instruct that if the explosion and fire were caused by the mismanagement of the motorman, plaintiff was entitled to recover. The instruction properly defines the degree of care the defendant's servants were required to exercise. The absence of the exercise of such care would be negligence and there was no need of a further elucidation of what constitutes negligence. It is further contended that the instruction is inconsistent with the following one given in behalf of defendant:

"If the jury find from the evidence that prior to the accident in question here defendant had employed competent inspectors to inspect the controller and motor, and other electrical appliances in use on defendant's cars, and that such inspector had used a very high degree of care in making reasonable inspections of the car upon which plaintiff was injured a short time prior to the time of her injury, and that such inspection failed to disclose any defect in the said controller, motors or electrical appliances, and that said car and its appli-

.ances were apparently in a reasonably safe condition for the purposes for which it was being used by defendant, and that the accident in question here could not have been reasonably anticipated, foreseen or prevented by defendant by the exercise of a very high degree of care in inspecting said car and its appliances, then plaintiff cannot recover in this action and your verdict must be for the defendant."

The instructions do not clash; the one for plaintiff submitted her prima facie case to the jury; the one for the defendant submitted facts which, if found by the jury, would defeat plaintiff's case. It told the jury, in effect, what would be an exercise of that high degree of care mentioned in plaintiff's instruction and directed that if the jury found defendant had performed those acts (constituting a high degree of care) the verdict should be for the defendant. The instructions should be read together and when so read no conflict will be found between them. The series of instructions given for defendant fully and very fairly submitted to the jury every phase of defendant's evidence, and while it seems, from a mere perusal of the abstracts of the evidence, that defendant's evidence ought to have satisfied the jury that defendant used approved, modern appliances for the equipment of its car, that its inspection was as thorough as could be made and as frequent as necessary, the jury found against it and, apparently, against the weight of the evidence. But whether or not the verdict is against the weight of the evidence was a question addressed to the trial court by the motion for a new trial. In the exercise of its discretion, the trial court overruled the motion and its action in that respect is not reviewable here. Our function has been discharged by a review of the errors of law assigned in defendant's briefs and nothing more remains for us to do but to affirm the judgment. The judgment is accordingly affirmed. All concur.