[Civ. No. 5843.   Fourth Dist.   Sept. 23, 1958.]

VERONICA SIMMONS, Appellant, v. F. W. WOOLWORTH
COMPANY (a Corporation), Respondent.

Benjamin Weissmann and Johnson & Johnson for Appellant.

Luce, Forward, Kunzel & Scripps for Respondent.

GRIFFIN, P. J.—Plaintiff-appellant brought this action for personal injuries against defendant-respondent company, alleging that on September 10, 1955, she descended to the basement of defendant's store by escalator to purchase various items, and after making such purchases she again made use of it to ascend to the street floor; that while so ascending she was injured due to the carelessness and negligence in the maintenance of said escalator in that it was being maintained in a dangerous, defective and unsafe condition; that plaintiff had no notice of such condition and she was using it in the ordinary and usual manner for which it was designed. She sought general damages in the sum of $50,000 and special damages in the sum of $3,000.

By answer defendant generally denied these allegations, admitted plaintiff did fall while ascending on said escalator, and alleges the affirmative defense of contributory negligence on her part. A trial by the court resulted in a judgment for defendant with a finding that plaintiff entered the premises and on ascending from the basement, as alleged, she fell and sustained certain injuries, incurred certain bills and lost certain income. It specifically found that defendant was not negligent in its maintenance and operation of the escalator, and that neither the fall nor the injuries were caused by any negligent act or omission of the defendant.

It is plaintiff's claim on appeal that the evidence is contrary to the findings and insufficient to support the judgment; that it clearly indicates a failure on the part of defendant to fulfill its duty of care toward the plaintiff; and that the evidence gave rise to an inference of negligence under the doctrine of res ipsa loquitur.

It was stipulated or agreed by counsel and the court that the defendant's operation of the escalator placed it in the category of a common carrier, and the duty of care for the plaintiff in the instant case was the same as that of a common carrier, citing *Hendershott* v. *Macy's*, 158 Cal.App.2d 324 [322 P.2d 596]; and *Champagne* v. *A. Hamburger & Sons*, 169 Cal. 683 [147 P. 954], to the effect that although not insurers of the absolute safety of passengers, the common carrier is bound to the utmost care and diligence of very cautious persons as far as human care and foresight can go and are responsible for injuries occasioned by the slightest neglect against which human care and foresight might have guarded. (See also *McBride* v. *Atchison, Topeka & S. F. Ry. Co.*, 44 Cal.

2d 113, 119 [279 P.2d 966]; and *Croom* v. *Chicago, M. & St. P. Ry. Co.*, 52 Minn. 296 [53 N.W. 1128].)

It is defendant's claim that the sole question on this appeal is whether or not there is any substantial evidence which directly or inferentially supports the court's finding, citing *Callahan* v. *Gray*, 44 Cal.2d 107, 111 [279 P.2d 963], where the rule is stated to be that:

" 'Whether or not defendant was guilty of negligence . . . or plaintiff was guilty of contributory negligence . . . is ordinarily a question of mixed fact and law and may be determined as a matter of law only if reasonable men following the law can draw but one conclusion from the evidence presented' . . . and 'when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court' . . .'' (Citing cases.)

In support of her claimed cause of action plaintiff testified she had been a maid at the Mercy Hospital and had sprained her leg and had been off duty for some time, but on September 10th she was able to place her weight on her sprained leg and was about ready to go back to work; that although she did not use crutches in her home the doctor told her it was better for her to use them when she went out so she took them with her; that in company with her grandson, who had been on the escalator before that day, she safely rode the escalator to the basement, bought a little train for him, and started up the escalator carrying her package (about one foot square), crutches (because she did not need them to support her), and her handbag with one arm, and gripping the rail with her hand; that the boy had one hand on the rail and one hand was holding onto the pocket in her jacket; that the escalator was moving continuously; that there were no other passengers on it; that when she stepped on the escalator it "seemed as though" it "shook as though something heavy or something was under your feet . . . it acted as though it couldn't go . . . trudging . . . and that is the only thing"; that she didn't have any idea of what happened; that she did not notice any change in the way the escalator was moving; that when about half way up she fell backwards and found herself at the bottom of the escalator with her head on the floor and her feet extending up on the escalator; and that she supposed the company had stopped it by that time; that she suffered considerable injuries, was taken to the hospital, and was under treatment for some time. She testified that about one year

before that she had broken her hip and she had always gone on that escalator every time she went down town because that is the only way she could get upstairs.

Thereafter plaintiff called a clerk in the curtain department in the basement of defendant's store under section 2055 of the Code of Civil Procedure. She testified that her counter was about 10 to 15 feet from the escalator; that her other duties were as a buyer and she was on the safety committee of the store; that they watched the activities of other employees, involving safety precautions and checked on the escalator, and in case of an accident they turned it off; that on the day in question she recalls seeing a woman with crutches, accompanied by a little boy; that the woman with the crutches was standing by the escalator for a few minutes as though she was deciding whether she wanted to go up or not; that she (the clerk) turned her head to wait on a customer and the next thing she heard was a scream and the lady was lying at the bottom of the escalator; and that the escalator was turned off by someone on the safety committee. She then said that on occasions if people have crutches or seem to be frightened of the escalator some member of the committee might ask them to go up on the stairway, or if they seemed as though they could not go up normally and are a little bit afraid, they have gone up on the escalator behind them so they would not fall; that she was waiting on a customer and did not ask plaintiff to take the stairs nor did she go with her up the escalator. Thereafter, plaintiff rested her case on the question of liability. Defendant moved for a nonsuit but subsequently withdrew its motion and rested its case on the question of liability. Thereafter the court made the findings indicated.

In *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436 [247 P.2d 344], in discussing the elements of the doctrine of res ipsa loquitur, the court held that for res ipsa loquitur to apply it must appear, either as a matter of common experience or from evidence in the case, that the accident is of a type which probably would not happen unless someone was negligent, since in the absence of such a probability there would be no basis for an inference of negligence which would serve to take the place of evidence of some negligent act or omission; that for res ipsa loquitur to apply it must appear that defendant had sufficient control or connection with the accident that it can be said that he was more probably than not the person responsible for plaintiff's injury; that a plain-

tiff may properly rely on res ipsa loquitur even though he has participated in the events leading to the accident, if the evidence excludes his conduct as the responsible cause; and that a statement in cases that for res ipsa loquitur to apply the accident must not have been due to any voluntary action or contribution on the part of the plaintiff should not be confused with the problem of contributory negligence, and its purpose, like that of control by defendant, is merely to assist the court in determining whether it is more probable than not that defendant was responsible for the accident.

■ Under the evidence related, the trial court was justified in rejecting any inference of negligence under the rule, believing it could not reasonably exclude plaintiff's conduct as the responsible cause and because plaintiff did not meet the burden of showing that defendant was more probably than not the one responsible for plaintiff's injury. (See also *Worden* v. *Central Fireproof Building Co.*, 172 Cal. 94, 96 [155 P. 839].)

The claimed acts of negligence of defendant, which plaintiff claims were shown as a matter of law, involve the failure of defendant's clerk or safety committee member in not assisting plaintiff up the escalator or warning her to take the stairs. Here it appears that plaintiff was familiar with this escalator, having used it on many previous occasions. Although she did not need her crutches and could stand on her feet without strain, she chose to carry her crutches which she did not in fact need for walking purposes. Apparently she was carrying them at the time she was about to step upon the escalator and did in fact negotiate the first step in safety without assistance and it was not until she was half way up that she fell and said she did not know the reason. Her testimony that there seemed to be strain, sluggishness or "trudging" as she first stepped on it may well have been discounted by the trial judge in view of the testimony that the escalator continued to run and she did not notice any change in the way it was running. At least the trial court could have found from plaintiff's actions in approaching the escalator and satisfactorily negotiating the first step that it was reasonable to believe she did not need the assistance of the clerk and that plaintiff could well negotiate the trip unassisted. Apparently plaintiff thought she could and it was not unreasonable for the clerk to think likewise. From the evidence produced the court may well have believed that the plaintiff properly entered the escalator and that the cause of her fall was not due to its

sudden stopping or starting but from plaintiff losing her balance by reason of her lack of capacity to sufficiently grip the handrail or that the boy may have lost his balance and pulled plaintiff backwards in a fall. Under these circumstances it cannot be said that defendant was guilty of negligence as a matter of law or that plaintiff had met the burden of proving her injuries were due proximately to defendant's negligence.

Judgment affirmed.

Mussell, J., and Coughlin, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.